497 A.2d 938

**Paul E. COURTNEY, Esquire, Louis J. Mercandante, Jr. and Ben J. Mauro, individually and trading as Northview Estates Development Company, Appellees,**

v.

**RYAN HOMES, INC., Appellant.**

Superior Court of Pennsylvania.

Argued March 4, 1985.

Decided Aug. 16, 1985.

---

George R. Specter, Pittsburgh, for appellant.

Scott L. Melton, Conway, for appellees.

Before BROSKY, WIEAND and LEDERER,* JJ.

WIEAND, Judge:

This is an appeal from an order denying a petition to strike and/or open a judgment entered by confession pursuant to a warrant of attorney contained in a mortgage note on which the petitioner was admittedly in default. Because

---

* The Honorable William J. Lederer, Senior Judge, of the Court of Common Pleas of Philadelphia County, Pennsylvania, is sitting by designation.

the judgment is not defective and because the petitioner failed to show facts constituting a meritorious defense to the indebtedness, we affirm. However, we agree with the appellant that the court erred when it rendered an advisory opinion regarding the amount of land subject to the lien of the judgment.

On November 3, 1977, Ryan Homes, Inc. (Ryan) paid $10,000.00 for an option to buy two tracts of land in the Borough of Economy, Beaver County, from Paul E. Courtney, Esquire, Lewis J. Mercandante, Jr. and Ben J. Mauro, trading as Northview Estates Development Company (Northview Estates). The option agreement provided that if Ryan exercised its option, it would purchase the entire tract consisting of 123.44 acres for a consideration of $2,700.00 per acre. Ryan exercised the option, and closing was held on June 13, 1979. Ryan paid to Northview Estates the sum of $86,656.96 on account of a total purchase price of $333,299.87 and received a credit for the prior payment of $10,000.00 made as consideration for the option. A purchase money mortgage and accompanying note were executed by Ryan in favor of Northview Estates for the unpaid balance of $236,642.91. The note contained a schedule of payments requiring Ryan to pay three annual installments of $78,880.97 each on the first, second and third anniversary dates of the closing, with interest payable quarterly at a rate of seven percent per annum. The note contained a confession of judgment clause as follows:

In case default be made in the payment of the within obligation or any other sum due hereunder or under the aforesaid mortgage and maker fails to cure such default after receiving thirty (30) days' written notice thereof, maker hereby empowers any attorney of any court of record within the United States of America to appear for maker and, with or without declaration filed, confess judgment against the Undersigned in favor of any holder hereof, for the unpaid balance of the principal debt together with all other sums due hereunder, costs of suit and an attorney's commission of Five Hundred Dollars

($500.00) or five percent (5%) of the total indebtedness, whichever is smaller, on which judgment or judgments one or more executions may issue forthwith upon failure to comply with all of the terms and conditions of this note and the aforesaid mortgage. Maker hereby forever waives and releases all errors in said proceedings, waives stay of execution, the right of inquisition, and extension of time of payment, agrees to condemnation of the mortgaged premises levied upon by virtue of such execution, and waives all exemptions from levy and sale of the mortgaged premises that now is or hereafter may be enacted into law.

Clauses in both the mortgage and note provided that Ryan's liability was limited to the amount which could be recovered from the real estate securing the mortgage obligation and that Ryan should not be liable for any deficiency therein. The mortgage also provided for releases of real estate from the lien of the mortgage at the rate of one acre for each $2,700.00 paid. Specifically, the mortgage recited:

It is the understanding and agreement between the parties that the mortgagor shall be entitled from time to time during the term of this Mortgage, to have portions of the mortgaged premises released from the lien of this Mortgage as hereafter provided. The Mortgagor, having paid unto the Mortgagee a sum equal to twenty-nine percent (29%) of the total price of the mortgaged premises upon the delivery hereof, the Mortgagee shall at the request of the Mortgagor at any time following the recording of this Mortgage, in consideration of said prior payment and without further consideration release that part of the mortgaged premises selected by the Mortgagor (hereinafter called the "initially released parcel"), provided that said part of the mortgaged premises so selected shall consist of one (1) parcel containing twenty-nine percent (29%) of the total acreage of the mortgaged premises.

The Mortgagee shall, from time to time during the term of this Mortgage, at the request of the Mortgagor and

upon the payment by the Mortgagor of a release price per acre of an amount determined by dividing the total number of acres of the mortgaged premises into the total consideration paid therefor released from the lien of this Mortgage additional portions of the mortgaged premises selected by the mortgagor.

The Mortgagor may, in making principal payments due under this Mortgage, defer the selection of that part of the mortgaged premises which the Mortgagor would be entitled to have released.

On the first anniversary, Ryan paid $78,880.97, the full installment then due. When this was added to the amount paid at closing, the total amount paid on account of principal as of June 13, 1980 was $175,537.93. The unpaid balance, therefore, was $157,761.94. On January 26, 1981, Ryan requested and received from Northview Estates a release of 21.2066 acres. This was almost forty-four acres less than the 65 acres Ryan was entitled to have released pursuant to the mortgage provision requiring releases of one acre for each $2,700.00 paid on account of the total purchase price. Release of the remaining acreage was deferred. On June 12, 1981, one day before the second anniversary of the mortgage, Ryan requested the release of an additional 43.798 acres from the lien of the mortgage. The second annual installment of $78,880.97 due on June 13, 1981, however, was not paid when due. Therefore, Northview Estates refused to sign the release which it received from Ryan.[1] Ryan has not made any further payments, and Northview Estates has refused to release any land in addition to the 21.2066 acres released on January 26, 1981.[2]

On January 13, 1983, Northview Estates filed a complaint in equity in the Court of Common Pleas of Beaver County, at No. 53 of 1983 D.S.B., to recover damages from Ryan for

1. Although Ryan had mailed the request for release on June 12, appellees contend that they received the letter and proposed release some time after June 13.

2. Northview Estates contends that if it releases the land requested by Ryan, the value of the remaining land will be inadequate to secure the unpaid balance of the mortgage.

breach of contract, unjust enrichment and waste. Ryan filed a counterclaim requesting an order directing performance of the release provisions of the mortgage. Both the complaint and counterclaim are undecided and still pending in the Court of Common Pleas of Beaver County.

On January 25, 1983, Northview Estates gave Ryan written notice that Ryan was in default of payments required by the note and stated that if default were not cured within thirty days, judgment would be confessed for the unpaid balance. When payment was not made, Northview Estates filed a complaint in confession of judgment for $172,066.09,[3] and judgment was confessed pursuant to the warrant of attorney contained in the note. The complaint averred that Ryan had defaulted in payment according to the terms of the note and had failed to cure the default within thirty days after receipt of written notice.

One month later, Ryan filed a petition to strike and/or open the judgment. After submission of briefs, but without hearing, the trial court, by order and opinion dated January 30, 1984, denied Ryan's petition. Ryan thereupon filed an appeal. The appeal was discontinued when the court granted reconsideration. When, after reconsideration, the court again denied relief, the present appeal was filed.

A review of the record discloses no record defect in the judgment. No particular words or phraseology are required to enter judgment by confession; it is the substance and not merely the form which is important. *Stein v. Penncrest Construction Corp.*, 280 Pa.Super. 560, 565, 421 A.2d 1074, 1076 (1980). The complaint and confession of judgment, although combined in one document, were substantially in the form required by the applicable rules of civil procedure. Moreover, when Ryan executed the note, it expressly waived and released errors in the procedure used

---

**3.** The judgment was itemized as follows:

| | |
|---|---|
| Principal Sum | $157,761.94 |
| Interest | 13,804.15 |
| Attorney Fees | 500.00 |
| TOTAL | $172,066.09 |

to confess judgment. "[W]hile such release does not cure the defect of a lack of authority to confess the judgment, it does waive the right to attack mere irregularities in the proceeding [, i.e., procedural defects,] apparent in the record." *West Penn Sand & Gravel Co. v. Shippingport Sand Co.*, 367 Pa. 218, 222, 80 A.2d 84, 86 (1951). See also: *Langman v. Metropolitan Acceptance Corp.*, 318 Pa.Super. 381, 385, 465 A.2d 5, 7 (1983); *Stein v. Penncrest Construction Corp., supra,* 280 Pa.Super. at 566, 421 A.2d at 1077; *Green Ridge Bank v. Edwards,* 247 Pa.Super. 231, 240, 372 A.2d 23, 27 (1977). The trial court properly refused to strike the judgment.

"It is well-established that our scope of review on appeals from the grant or denial of a petition to open a judgment by confession is very narrow. Such petitions are appeals to the equitable and discretionary powers of the trial court, and absent an abuse of discretion or manifest error, we will not disturb its decision." *City of Pittsburgh v. Allegheny County Distributors, Inc.,* 339 Pa.Super. 109, 111, 488 A.2d 333, 334 (1985) (citations omitted). See also: *Lazzarotti v. Juliano,* 322 Pa.Super. 129, 133, 469 A.2d 216, 218 (1983); *Lincoln Bank v. Kelly,* 282 Pa.Super. 261, 267–268, 422 A.2d 1106, 1109 (1980). In order for a petition to open a judgment by confession to prevail, the judgment debtor must act promptly and produce evidence in support of a meritorious defense. *Young v. Pileggi,* 309 Pa.Super. 565, 568, 455 A.2d 1228, 1229 (1983). See also: *Lambakis v. Exar,* 340 Pa.Super. 483, 488, 490 A.2d 882, 884 (1985). Evidence of a meritorious defense must be such as would create an issue requiring submission to a jury. *Hamilton Bank v. Rulnick,* 327 Pa.Super. 133, 137, 475 A.2d 134, 136–137 (1984). The right to enter judgment on a note is a question governed by the intent of the parties. See: *Fidelity Bank v. Gorson,* 296 Pa.Super. 1, 6, 442 A.2d 265, 267–268 (1982). The defense must be a valid defense to the entry of judgment under the terms of the instrument which contains the warrant of attorney. See: *Haggerty v. Fetner,* 332 Pa.Super. 333, 481 A.2d 641 (1984).

The confession of judgment clause contained in the instant mortgage note authorized confession of judgment "[i]n *case default be made in the payment of the within obligation* or any other sum due hereunder or under the aforesaid mortgage and maker fails to cure such default after receiving thirty (30) days' written notice thereof...." (emphasis added). Judgment was to be entered *"for the unpaid balance of the principal debt* together with all other sums due hereunder...." (emphasis added). Ryan admitted that it was in default of the mortgage note. It also did not deny that it had received written notice of default at least thirty days prior to entry of judgment. The default, moreover, has not been cured. There is no dispute that as of June 13, 1982, the date final payment was due, appellant was in default under the terms of the note in the amount of $157,761.94. Northview Estates, therefore, was authorized to confess judgment against appellant for the full amount remaining unpaid, together with interest and attorney's fees. Ryan has failed to aver any valid defense to the debt owed under the note or to Northview Estate's right to judgment therefor.

Appellant argues, however, that the lien of the judgment includes too much land. Approximately 43 acres should have been released, Ryan argues, and should not have been subjected to the lien of the judgment. This issue was not properly a part of the proceeding to open judgment.

 A mortgage and an accompanying note are separate obligations. The note is evidence of the debt; and the mortgage provides collateral security for the debt. *Haggerty v. Fetner, supra,* 332 Pa.Superior Ct. at 342, 481 A.2d at 646. "The holder of a bond and mortgage can proceed in rem or in personam to enforce his claim. He may proceed by an action of mortgage foreclosure or by an action on the bond [or note] which the mortgage secures." *Bank of Pennsylvania v. G/N Enterprises, Inc.,* 316 Pa.Super. 367, 371, 463 A.2d 4, 6 (1983) (citations omitted). As a general rule, a judgment entered by confession on a mortgage note or bond, unlike a judgment in mortgage foreclosure, is

general and is not restricted to the mortgaged premises. It is a judgment against the maker of the note personally. *Id.*, 316 Pa.Superior Ct. at 371, 463 A.2d at 6.

■ It is true, of course, that the note and mortgage in this case limit Ryan's liability to the amount which can be realized from the mortgaged premises. Even though the amount which Ryan may ultimately be required to pay is limited, the right of Northview Estates to confess judgment for the entire amount due has not been impaired. Judgment may be confessed for the full amount due, and with respect to that amount Ryan has no defense.

■ Whether Ryan is entitled to have additional land released from the lien of the mortgage and/or judgment is not determinative of the validity of the judgment confessed by Northview Estates. A determination of the amount of land which Ryan is entitled to have released is not a necessary part of a proceeding to open the judgment. If the dispute regarding the release of land is not resolved in separate proceedings, it may become an issue if and when Northview Estates attempts to execute upon the judgment. "As security, the creditor has a right to as large collateral, and as many different forms of it, as the parties chose to contract for. That is a matter with which the court cannot interfere." *Fidelity Bank v. Gorson, supra,* 296 Pa.Super. at 5, 442 A.2d at 267, quoting *Integrity Title Insurance, Trust & Safe Deposit Co. v. Rau,* 153 Pa. 488, 492, 26 A. 220, 220 (1893). A determination of the collateral which secures the judgment indebtedness is not properly a part of the proceedings instituted by Ryan to open the confessed judgment. This judgment, as we have observed, was properly entered by confession, and the judgment debtor, i.e., Ryan, has failed to show that it has any defense thereto. Therefore, the court properly refused to strike or open the judgment.

■ The trial court erred, however, when it attempted to determine by dictum that Northview Estates had been relieved of its contractual obligation to release land by

Ryan's default in making payments required by the mortgage. When the court attempted to do so, it rendered an opinion that was advisory only; it was unnecessary to the issue then before the court. Courts are not instituted to render advisory opinions. *Schoenbrun v. Nettrour,* 360 Pa. 474, 476, 61 A.2d 868, 869 (1948). We will not compound the error committed by the trial court by conducting appellate review of the trial court's advisory opinion. Whether Ryan is entitled to receive a release of additional land pursuant to agreement of the parties is an open question which can only be determined in appropriate proceedings. The trial court's dictum regarding that separate issue does not establish the law of the case. Cf. *Pierro v. Pierro,* 434 Pa. 131, 132, 252 A.2d 652, 653 (1969).

The order refusing to strike or open the judgment is affirmed but without prejudice to appellant's right to litigate in separate proceedings (1) the effect of its default upon the provisions of the parties' agreement regarding the release of land and (2) the amount of land on which appellees can execute to enforce their judgment.