# Olszewski v. Sinclair Broadcast Group Inc.

C.P. of Luzerne County, no. 259-C-1998.

*James Beasley,* for plaintiff.
*Lee Ellis* and *David Wachen,* for defendants.

FEUDALE, *J.,* May 19, 2003—Before the court is defendants' motion for summary judgment in a defamation case wherein both parties are public figures. The plaintiff, who is currently a common pleas judge, was at the time the district attorney of Luzerne County. Defendant, Frederick W. Vopper a/k/a Fred Williams, was a radio talk show host who engaged in what defendants characterized as "classic talk radio." The defendant hosted the "Fred Williams Show" on Wilkes-Barre radio station WILK-AM. In preparation for his show the defendant allegedly read newspapers "voraciously," then focused on the day's hot-button issues, such as "local politicos and emerging scandals."

The cause of action involves defendant's "commentary" on the radio about the plaintiff's alleged acts of omission or commission/abuse of prosecutorial discretion in the performance of his duties as district attorney.

The plaintiff set forth in his complaint 24 different statements that he alleges were defamatory. Such reference plaintiff's "prosecution" of a sexual predator (Rygiel), DUI homicide plea bargaining, a marijuana case involving a dentist (Weltman), spousal abuse (Coslett), embezzlement (Lefchak), and allegations about the district attorney's alleged use/misuse of county-owned cell phones.

For example, defendant "commented," inter alia, on such things as: (i) plaintiff's alleged refusal to prosecute a spousal abuse claim against a friend who was an assistant district attorney for 15 years; (ii) that plaintiff allegedly engaged in "corrupt deal making" with a judge so sexual predators received a more lenient sentence, including work release; (iii) that plaintiff was engaging in "guilty" plea agreements where people who committed homicide by vehicle were only receiving weekends in jail or other special consideration; (iv) that plaintiff did not properly prosecute other defendants because of their political or social connections; and (v) that the district attorney allegedly failed to pay for private use of county-owned cell phones. All of the above, according to the defendant's "commentary," were acts by the district attorney of corruption, misfeasance and malfeasance.

## STANDARD FOR SUMMARY JUDGMENT

Pursuant to Pennsylvania Rule of Civil Procedure 1035.2 governing motions for summary judgment:

"After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party

may move for summary judgment in whole or in part as a matter of law.

"(1) Whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

"(2) If, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pa.R.C.P. 1035.2 (2002).

Under Pennsylvania law, a court may grant a motion for summary judgment only when there exists no genuine issue as to any material fact, and where the moving party is entitled to judgment as a matter of law. *Strain v. Ferroni,* 405 Pa. Super. 349, 354, 592 A.2d 698, 701 (1991) (citing *Vargo v. Hunt,* 398 Pa. Super. 600, 601, 581 A.2d 625, 626 (1990)). However, a court will not grant summary judgment unless the case is clear and free from doubt. *Lower Lake Dock Company v. Messinger Bearing Corp.,* 395 Pa. Super. 456, 461, 577 A.2d 631, 634 (1990).

Additionally, in reviewing the facts, pleadings and documentary evidence, the trial court must accept as true all well pleaded facts relevant to the issues in the non-moving party's pleadings, and give to him the benefit of all reasonable inferences to be drawn therefrom. *Peffer v. Penn 21 Associates,* 406 Pa. Super. 460, 463, 594 A.2d 711, 712 (1991). Any doubt regarding the ex-

istence of a genuine issue of material fact must be resolved in favor of the non-moving party. *Denlinger Inc. v. Dendler,* 415 Pa. Super. 164, 608 A.2d 1061 (1992).

## DEFAMATORY MEANING, MERE OPINION, RHETORICAL HYPERBOLE

Defendants' arguments in support of summary judgment are twofold. They allege that 14 of the statements are not capable of defamatory meaning and/or that all 24 statements are merely opinion/rhetorical hyperbole.

According to defendants, the fundamental question is "whether statements about a prosecutor's legal exercise of discretion in entering plea bargains (Rygiel, DUI cases, Weltman) or refrained from discretionary acts (Coslett, Lefchak) are capable of defamatory meaning."

Defendants attempt to cast the "fundamental question" by utilizing the term "legal exercise" of prosecutorial discretion. However, a review of the context and content of what counsel for the defendants describe as Mr. Williams' "spontaneous, provocative, hyperbolic give and take" on his radio talk show, reflects a clear jury question as to whether the defendant was engaging in what we would characterize as "reflective rumination" about the district attorney's discretionary plea bargaining as compared to his "commentary" that District Attorney Olszewski was failing to prosecute politically/socially connected individuals or friends and/or was otherwise engaging in misfeasance and malfeasance in office. See *Curran v. Philadelphia Newspapers Inc.,* 497 Pa. 163, 439 A.2d 652 (1981) and *Sprague v. Walter,* 357 Pa. Super. 570, 516 A.2d 706 (1980) wherein defamation ac-

tions were sustained where plaintiff was accused of failing to prosecute politically connected individuals and friends. See also, *MacElree v. Philadelphia Newspapers Inc.*, 544 Pa. 117, 674 A.2d 1050 (1996) which held that an accusation of misconduct in office (allegedly acting in a racist manner in his official capacity as district attorney) is actionable.

In their argument, defendants seem to assert there is some sort of dichotomy if the commentary occurs in a "hard news" newspaper (in the above case articles printed in the *Philadelphia Inquirer*) as compared to the "commentary" assertions uttered over the radio.

Defendants' arguments about the role/commentary of the radio talk show host seemed to suggest that Mr. Williams' commentary does not really matter *i.e.,* should be taken with a "grain of salt" because no one is really listening anyway or in the alternative that the content should be ameliorated in consideration of the nature of the audience hearing the remarks."[1]

We are unaware whether defendants are suggesting we adopt some sort of belief in the superior wisdom of the ignorant; whether talk show host or listener. However, the suggestion the public utterances/commentary of a talk show host should be taken with a "grain of salt" is too close to gossip, and we are of the opinion that

---

[1]. "By contrast, statements 15 through 18 were spoken during an opinion-oriented talk radio program from which listeners expected spontaneous, provocative, hyperbolic give and take, and took what was said with at least 'a grain of salt.'" Page 14 para. 2 of defendants' reply memorandum in support of motion for summary.

gossip is arguably often a personal confession of either malice, ignorance, or lack of concern about the facts.

In any event there is no case law that supports defendants' contentions and we find there are genuine issues as to the material facts and defendants are not entitled to judgment as a matter of law on the issues of defamatory meaning, mere opinion, or rhetorical hyperbole.

## STATUTE OF LIMITATIONS

Defendants next argue that statements 3, 4, 12, 14, 16, 17 and 18 should be dismissed as untimely. On January 14, 1998, plaintiff filed this suit against certain on-air commentary by Mr. Williams about plaintiff's performance in office, The complaint sought damages for 15 statements by Mr. Williams on six radio shows in 1997. Defendants timely filed an answer and new matter in which they asserted that the statements were not actionable.

Throughout the complaint, the plaintiff alleged that the defendants broadcast defamatory statements concerning him both on certain dates "and other occasions." Additionally, he attached transcripts of certain radio shows to the complaint and also alleged that "additional broadcasts will be supplied as transcribed."

On August 28, 1998, the plaintiff moved for leave to amend his complaint to amplify his allegations regarding the "other occasions" and "additional broadcasts" on which the defendant had defamed him. Plaintiff argued that amendments which merely amplify allegations already set forth in the complaint relate back to the day on

which the complaint was filed and are timely. *Connor v. Allegheny General Hospital,* 501 Pa. 306, 310-11, 461 A.2d 600, 602 (1983).

On September 24, 1998, defense counsel wrote a letter to President Judge Augello specifically advising him that defendants did not object to the amendments which provided:

"Defendants have now had the opportunity to review and consider Mr. Olszewski's motion for leave to file his proposed amended complaint, and have decided not to oppose it."

It is plaintiff's position that this was an implicit admission the amendments were timely and proper, and a waiver of any right to later argue otherwise.

By order and opinion dated October 2, 1998, Judge Augello granted the plaintiff's unopposed motion for leave to file his amended complaint. The president judge's opinion and order provided in relevant part:

"Augello, P.J., October 2, 1998:

"I. *History and Nature of proceeding:*

"On January 14, 1998, the plaintiff, Peter Paul Olszewski Jr., filed by complaint a defamation action against the defendants arising from alleged statements made by the defendant, Frederick W. Vopper a/k/a Fred Williams, (Vopper) during radio programs broadcast by the defendants. This matter is before the court on a variety of procedural issues.

"On March 9, 1998, the defendants filed an answer with new matter. On March 27, 1998, the plaintiff filed a reply to new matter. On March 30, 1998, the plaintiff

filed a 'motion to strike defendants improper answers,' to which the defendants filed an answer on April 21, 1998. On August 28, 1998 the plaintiff filed a 'motion for leave to file an amended complaint'. . . .

"II. AMENDED COMPLAINT

"It is well established in this Commonwealth that the right to amend a complaint must be liberally granted. *Connor v. Allegheny General Hospital,* 501 Pa. 306, 461 A.2d 600, 602 (1983). This is especially so where, as here, the proposed amendment merely amplifies that which has already been averred. *Connor, supra.* In the present case, the plaintiff filed his complaint in January of this year. The plaintiff alleged throughout the complaint that the defendants broadcast defamatory statements about him both on certain dates 'and other occasions.' Paragraphs 13, 15, 17, 18, 19, 21, 23 and 25 of the complaint and exhibit 'A'. By the same token, the plaintiff attached transcripts of certain segments of the show to the complaint and also alleged that 'additional broadcasts will be supplied as transcribed.' Complaint, paragraph 12. The plaintiff now wishes to amend his complaint to more specifically identify the 'other occasions' on which the defendants allegedly defamed him. This proposed amendment does not change the original cause of action. Rather, as in *Connor* it merely amplifies allegations already set forth in the complaint. Therefore, the amendment would not result in any prejudice to the defendants and must be granted. *Connor.*"

The court then granted the defendants' motion for leave to file the amended complaint and indicated that plaintiff shall file the amended complaint within 20 days of

the date of the order which was dated October 2, 1998. On October 7, 1998, plaintiff filed the amended complaint, which raised the number of statements from 15 to 24 from radio programs on 14 dates in 1997.[2]

Of the nine statements added, seven were alleged to have been made more than a year before the filing of the amended complaint.

Under Pennsylvania law, a claim for defamation must be brought within one year of publication or broadcast. See 42 Pa.C.S. subsection 5523(1). Also, each broadcast is considered a separate "publication" and new cause of action for purposes of plaintiff's defamation claim and the one-year statute of limitations. See *Graham v. Today's Spirit,* 503 Pa. 52, 57, 468 A.2d 454, 457-58 (1983). Thus, the one-year statute of limitations for defamation begins to run as to each cause of action (*i.e.,* each statement) on the date the statement was made.

Clearly, seven statements were made more than a year before plaintiff first identified them in this action. Also, plaintiff does not dispute that each broadcast making up his defamation claim is considered a separate "publication" and a new cause of action for purposes of the one-year statute of limitation. Instead, plaintiff argues that: (i) defendant waived the issue and/or implicitly consented to these untimely claims; (ii) the court previously ad-

---

2. We would note the amended complaint, as filed, differed from the proposed amended complaint attached to the motion for leave to file an amended complaint arguably the only one approved for filing by the court, by adding a statement from the May 15, 1997 broadcast to paragraph 13 of the amended complaint.

dressed the issue; and (iii) these untimely broadcasts relate back to allegations in the complaint.

Plaintiff argues that because defendants did not oppose his motion for leave to amend his complaint, they somehow waived the right to challenge the timelines of seven broadcasts added through the amendment. No persuasive legal authority was offered for this proposition.

Rule 1030 of the Rules of Civil Procedure provides that "all affirmative defenses including . . . statute of limitations . . . shall be pleaded in a responsive pleading under the heading 'new matter' . . . ." Defendants' answers to both the complaint and amended complaint alleged under the heading "new matter" that plaintiff's claims are barred in part by this statute of limitations.

Rule 1032 states, "a party waives all defenses and objections which are *not* presented either by preliminary objection, *answer* or reply." (emphasis added) The Superior Court has recognized that the preferred manner of asserting a statute of limitations defense is by answer and new matter pursuant to Pa.R.C.P. 1030. *Ranker v. Skyline Corp.,* 342 Pa. Super. 510, 513, 493 A.2d 706, 707 (1985). Thus, not only did defendants not waive the limitations defense, they asserted it in the preferred manner.

Plaintiff next contends that in granting leave to amend his complaint, Judge Augello held that the seven statements were timely. In our view, no such thing ever happened and Judge Augello made no specific determination as to timeliness or otherwise addressed the issue of the statute of limitations. Simply stated, the issue was never raised by defendants, who did not oppose the mere

granting of leave, but preserved their affirmative defenses, including the statute of limitations, for disposition at a later time, by asserting them in their answer. As a result, all Judge Augello had before him was plaintiff's request for leave to amend. As plaintiff points out, courts of this commonwealth "liberally grant the right to amend pleadings." This is done without regard to the merits of a proposed amendment, particularly when the other side does not oppose the mere act of amending.

Faced with plaintiff's unopposed motion for leave relatively early in this litigation (especially in hindsight) and given the liberal policy towards granting leave, Judge Augello needed only to grant plaintiff's request.[3]

In our view, President Judge Augello's dictum has no impact on this court's ability to address the limitations issue now. See *Pierro v. Pierro,* 434 Pa. 131, 132, 252 A.2d 652, 653 (1969) ("what the [trial] court had to say in its opinion regarding the sufficiency of the pleadings is dicta and does not establish the law of the case"); *Troxel v. A.I. Dupont Institute,* 450 Pa. Super. 71, 81-82, 675 A.2d 314, 319 (1996) (holding earlier panel's unnecessary analysis was dicta and not binding on later panel); *Courtney v. Ryan Homes,* 345 Pa. Super. 109, 119, 497

---

3. Under Rule 1033, plaintiff could have sought to amend "by filed consent" without even requesting leave of court. Thus, to the extent Judge Augello included comments about plaintiff's amendment and his comment that the amendment "merely amplifies allegations already set forth in the complaint" such comments can only be fairly viewed as obiter dictum. See Black's Law Dictionary 967 (5th ed. 1979) (defining as "words of an opinion entirely unnecessary for the decision of the case").

A.2d 938, 942-43 (1985) (holding "trial court's dictum . . . does not establish the law of the case").[4]

Next, plaintiff asserted that the seven untimely statements from broadcasts never mentioned in the complaint somehow relate back to the complaint's vague, "catch-all" allegations that defendants had defamed him "on other occasions." In support of plaintiff's sweeping view, which if valid would presumably allow him to add even more statements now (more than five years after initiating this action), plaintiff cites *Connor* for the proposition that "amendments which merely amplify allegations already set forth in the complaint relate back to the date" of the complaint.

In *Reynolds v. Thomas Jefferson University Hospital*, the Superior Court squarely rejected plaintiff's argument, noting that "in *Connor*, the negligence alleged in the original complaint and the negligence alleged in the amended complaint were part of a causally related chain of events which occurred on the same day . . . and at the same place." 450 Pa. Super. 327, 342, 676 A.2d 1205, 1212 (1996). The broadcast containing these seven untimely statements occurred on *different* dates than the broadcast identified in the complaint, and cannot be said to have involved a "causally related chain of events." In our view, nothing in *Connor* changes the well established principle of forbidding the use of amended pleadings to add untimely causes of action.

---

4. Moreover, since the "decision" plaintiff ascribes to Judge Augello would have been clearly erroneous and would not be binding under the law of the case doctrine. *Commonwealth v. Starr*, 541 Pa. 564, 664 A.2d 1326 (1995).

Finally, a new defamation cause of action (*i.e.*, a new statement) raised in an amended complaint filed more than one year after the statement was broadcast is untimely, regardless of whether the statement would have been timely if alleged in the original complaint. See *Livingston v. Murray*, 417 Pa. Super. 202, 206-207, 612 A.2d 443, 445 (1992). The *Livingston* case is precisely on point. In *Livingston* a former athletic director at Duquesne University challenged newspaper articles from the *Pittsburgh Post-Gazette* and *Pittsburgh Press* regarding her departure from the school. In March 1991, the plaintiff sought to amend her complaint to also challenge a *Pittsburgh Press* article on the same subject from October 1989. Had the challenge to the October 1989 article been included in the original complaint from April 1990 (*i.e.*, within one year of publication) it would have been timely. The court found it was untimely as a matter of law, however, for the plaintiff to try to add the article to her lawsuit through an amended complaint more than a year after the October 1989 publication.

Accordingly, we shall dismiss statements 3, 4, 12, 14, 16, 17 and 18.[5]

---

5. We note plaintiffs "labored mightily" in presenting an eight-page reply brief on the day of argument, as well as sending the court an additional five-page letter to, as they described it, more fully address our question to plaintiff's counsel at argument whether it made a difference whether defendants filed an answer with new matter raising the statute of limitations after Judge Augello's ruling. In referring to said procedure as "extraordinary" and one with which they are not familiar, defendants asked the court to not consider the late filed arguments. We recall the old adage that when you have the law on your side, argue the law, when the facts favor you, argue the facts, and if you have neither, pound on the table. We construe counsel's response,

Finally, defendants claim statement 8 must also be dismissed because it was never said during any broadcast. In their amended complaint, plaintiff alleges that on November 19, 1997, Mr. Williams said that "Peter Paul Olszewski guided Harold and Mary Beth Weltman through the legal system and got them virtually free of serious jail time." (Statement 8.) Nowhere in the transcript of the November 19 broadcast do these words appear. Moreover, plaintiff now admits Mr. Williams did not make this statement during his November 19 broadcast or any other broadcast identified in the amended complaint. As it is now uncontroverted that Mr. Williams did not say statement 8 as alleged in the amended complaint, plaintiff's claim as to statement 8 fails as a matter of law. We therefore enter the following:

### ORDER

And now, May 19, 2003, defendants' motions for summary judgment based on their assertions that the statements are non-actionable expressions of opinion, rhetorical hyperbole, or are not capable of defamatory meaning are hereby denied. Defendants' motion for summary judgment as to statements 3, 4, 12, 14, 16, 17 and 18 based on their assertions that they are time-barred is hereby granted. Defendants' motion for summary judgment based on statement 8 never being said during any of the broadcasts at issue in this action is also granted.

---

although inappropriate, a last attempt to state their case in an area that was of obvious concern. Another adage which we can't attribute, is that the law is what is forcibly argued and plausibly maintained. Certainly, plaintiff has been forcible in their assertions, but based on our reviews such are not plausible.