J-S03038-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| SILVERSWORD CAPITAL INVESTMENTS, LLC | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| H. LARRY WILDE | |
| Appellant | No. 2054 EDA 2014 |

Appeal from the Order July 8, 2014
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): No. 2014-03720

BEFORE:  FORD ELLIOTT, P.J.E., PANELLA, J., and OTT, J.

MEMORANDUM BY OTT, J.:                    **FILED APRIL 22, 2015**

H. Larry Wilde appeals from the order entered July 8, 2014, in the Montgomery County Court of Common Pleas, denying his petition to strike or open the confessed judgment entered against him by Silversword Capital Investments, LLC ("Silversword").  The judgment, in the amount of $865,996.06, was confessed against Wilde based on a commercial guaranty he provided as collateral in satisfaction of his share of a $1.1 million loan provided to Moorestown Daycare Associates, LLC ("MDA").  On appeal, Wilde argues the trial court erred in refusing to grant his petition to strike or open the default judgment.  For the reasons set forth below, we affirm.

The facts underlying this appeal are summarized by the trial court as follows:

On or about March 20, 2001, Harleysville National Bank and Trust Company, successor by merger to Millennium Bank ("Harleysville"), made a loan to MDA, where it advanced to MDA the principal amount of $1,100.00.00. On or about October 5, 2007, Harleysville and MDA entered into a Note Modification Agreement, the purpose of which was, among other things, to re-advance the principal amount originally loaned, amend the interest rate, extend the maturity date and add certain financial covenants.

In conjunction with the Note Modification Agreement, and as additional security for the amounts loaned, Wilde entered into the Guaranty, whereby he absolutely and unconditionally guaranteed full and punctual payment and satisfaction of his "Share of the Indebtedness" of MDA to Harleysville. The Guaranty provides that Harleysville and its successors and assigns can enforce the Guaranty against Wilde, as guarantor, even when remedies against anyone else obligated to pay for the indebtedness or against any collateral securing the indebtedness, the guaranty or any other guaranty of indebtedness has not been exhausted. The Guaranty further defines the phrase "Guarantor's Share of the Indebtedness" to mean:

> an amount not to exceed Five Hundred Fifty Thousand & 00/100 Dollars ($550,000.00) of all the principal amount, interest thereon to the extent not prohibited by law, and all collection costs, expenses and attorneys' fees whether or not there is a lawsuit, and if there is a lawsuit, any fees for costs for trial and appeals.

In addition to guaranteeing the full and punctual payment and satisfaction of his share of the indebtedness to Harleysville, the Guaranty also contained a confession of judgment provision.

On February 28, 2013, MDA and First Niagara Bank, N.A. ("First Niagara"), as successor to Harleysville, entered into another Note Modification Agreement, wherein it was agreed that, as of February 21, 2013, the outstanding principal balance of the Note was $970,641.49, plus accrued interest. As part of this latest modification, MDA agreed that the maturity date under the Note was extended to May 20, 2013 and further agreed that all collateral and guaranties securing or supporting the Note remained in full force and effect and as valid collateral and support for the Note. Within the February 28, 2013 Note

Modification Agreement, Wilde also executed a "Consent and Reaffirmation of Guaranty and Suretyship Agreement," whereby he consented to the terms of the February 28, 2013 Note Modification Agreement, agreed that his Guaranty remained in full force and effect, and reaffirmed and restated his absolute and unconditional guaranty of his Share of the Indebtedness as contained in the October 1, 2007 Guaranty. Specifically, the Consent and Reaffirmation contained language reaffirming the confession of judgment clause in the Guaranty. The maturity date set forth in the February 28, 2013 Note Modification Agreement was thereafter extended to September 1, 2013.

As of the September 1, 2013 maturity date, the principal balance of $955,830.30 along with accrued interest had not been paid to First Niagara by MDA. … [Furthermore, pursuant to the terms of the Note, as] of the date the Complaint was filed, First Niagara had incurred reasonable costs, expenses and counsel fees pertaining to the indebtedness in the amount of $20,335.77.

MDA defaulted in its obligations under the Note by failing to pay the principal and accrued interest due thereunder by the September 1, 2013 maturity date. On December 20, 2013, First Niagara assigned all of its rights, title and interest in and to the loan and accompanying loan documents made to MDA, including the Note and Guaranty, to plaintiff, Silversword. Silversword proceeded to supply Wilde and MDA, respectively, with Notices of Default on January 20, 2014.

Trial Court Opinion, 7/29/2014, at 1-4.

Thereafter, on February 19, 2014, Silversword filed a complaint in confession of judgment in the amount of $865,996.06. On March 17, 2014, Wilde filed a petition to strike or open the confessed judgment. After Silversword filed a response, the trial court conducted a hearing on July 3,

- 3 -

2014. Subsequently, on July 8, 2014, the court denied Wilde's petition, and this timely appeal followed.[1]

On appeal, Wilde contends the trial court erred in denying his petition to strike or open the confessed judgment. Specifically, he argues the court should have struck the judgment because (1) certain costs included in the judgment were not expressly authorized by the warrant of attorney; (2) the warrant of attorney was not restated in the modification agreement, but rather, only incorporated by reference; and (3) the judgment included an excessive amount for attorney's fees. With regard to his request to open the judgment, Wilde claims he filed the petition in a timely manner and asserted several meritorious defenses. In particular, he argues he has "defenses, set-offs and counterclaims against Silversword, and cross-claims against [his partner in MDA, David J. Lisa], due to breach of fiduciary duties, usurpation of business opportunity and tortious interference with prospective contractual relations." Wilde's Brief at 24. He also contends that the same reasons he proffered to strike the judgment, justify opening the judgment.

A petition to strike off or open a confessed judgment "appeals to the equitable and discretionary powers of the trial court, and absent an abuse of discretion or manifest error, we will not disturb its decision." ***Courtney v.***

---

[1] The trial court did not direct Wilde to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

*Ryan Homes, Inc.*, 497 A.2d 938, 941 (Pa. Super. 1985) (citations omitted).

> A confessed judgment will be stricken "only if a fatal defect or irregularity appears on the face of the record." A judgment by confession will be opened if the petitioner acts promptly, alleges a meritorious defense, and presents sufficient evidence in support of the defense to require the submission of the issues to a jury. In adjudicating the petition to strike and/or open the confessed judgment, the trial court is charged with determining whether the petitioner presented sufficient evidence of a meritorious defense to require submission of that issue to a jury. A meritorious defense is one upon which relief could be afforded if proven at trial.

*Ferrick v. Bianchini*, 69 A.3d 642, 647 (Pa. Super. 2013) (citations omitted).

> In other words, the petition to strike a confessed judgment must focus on any defects or irregularities appearing on the face of the record, as filed by the party in whose favor the warrant was given, which affect the validity of the judgment and entitle the petitioner to relief as a matter of law. "[T]he record must be sufficient to sustain the judgment." The original record that is subject to review in a motion to strike a confessed judgment consists of the complaint in confession of judgment and the attached exhibits.
>
> In contrast, "if the truth of the factual averments contained in [the complaint in confession of judgment and attached exhibits] are disputed, then the remedy is by proceeding to open the judgment," not to strike it. A petition to strike a confessed judgment and a petition to open a confessed judgment are distinct remedies; they are not interchangeable.

*Midwest Fin. Acceptance Corp. v. Lopez*, 78 A.3d 614, 623 (Pa. Super. 2013) (citations omitted).

After a thorough review of the record, the parties' briefs, and the relevant case law, we find the trial court's July 29, 2014, opinion

comprehensively discusses and properly disposes of the questions presented in this appeal. *See* Trial Court's Opinion, 7/29/2014, at 4-10 (concluding: (1) the amount of the judgment confessed was authorized under the terms of the Guaranty; (2) although the Guaranty limited Wilde's share of the past due principal to $550,000.00, that limit did not include Wilde's share of the interest, attorney's fees, and other costs; (3) the "clear and conspicuous" cognovit clause set forth in Guaranty and specifically referenced in the Note Modification Agreement, although not "restated in its entirety," was sufficient to demonstrate "the parties' intent that it continue in effect;[2] (4) the cognovit clause specifically provided for a 10% attorney's commission, which was not excessive, and has been "routinely upheld" in Pennsylvania courts;[3] (5) Wilde failed to demonstrate a meritorious defense, and "has neither disputed the default nor alleged that he has cured the default[;]"[4] and (6) "Wilde's defenses are all directed towards Lisa, acting in his capacity as a member of MDA[,]"[5] not against Silversword, the holder of the Guaranty and Note). Accordingly, we affirm on the basis of the trial court's opinion, but add one additional comment.

_____

[2] Trial Court Opinion, 7/29/2014, at 7-8, *citing* **Ferrick**, **supra**.

[3] **Id.** at 8.

[4] **Id.** at 9.

[5] **Id.**

- 6 -

With respect to Wilde's claim that the amount of the attorney's commission was excessive, we acknowledge Wilde refers to a recent decision of this Court, *Graystone Bank v. Grove Estates, L.P.*, 58 A.3d 1277 (Pa. Super. 2012), *aff'd*, 81 A.3d 880 (Pa. 2013), which questioned the routine imposition of a 10% attorney's commission, even when commission is provided for in the parties' agreement.

In *Greystone Bank*, the plaintiff confessed judgment against the defendant in the amount of $10,650,027.74, which included a 10% attorney's fee surcharge of $966,361.11. On appeal, a panel of this Court stated that any "fee-shifting provision" in a contract is subject to a reasonableness standard. *Id.* at 1283. The panel also referred to the trial court's opinion, in which the court noted the contract included a provision "elsewhere in the agreement requiring a **reasonable** attorney fee for collecting on the loan[,]" although the trial court ultimately concluded the provision was "distinct" from the one allowing for a 10% attorney's fee. *Id.* (emphasis supplied). Because it was unclear whether the trial court reviewed the fee award for reasonableness, the *Graystone Bank* Court remanded the matter so that the trial court could determine "whether the 10% attorney's fee provision worked a reasonable result under the circumstances." *Id.* at 1284.

Here, however, Wilde does not argue that either the Guaranty or any of the amendments include a provision requiring the attorney's fee be a "reasonable" amount. Rather, he argues this Court should read a

"reasonableness" clause into the agreement. While **Graystone** provides some authority for this argument, we find it distinguishable since, in that case, the agreement did call for a "reasonable attorney fee for collecting on the loan." **Id.** at 1283. Accordingly, we rely, as did the trial court, on the prior decisions of this Court authorizing an attorney's commission, in a warrant of attorney clause, based on a percentage of the balance due. **See RAIT Partnership, LP v. E Pointe Properties, I, Ltd.**, 957 A.2d 1275 (Pa. Super. 2008) (upholding attorney collection commission of 15% of balance, or $450,000.00); **Dollar Bank, Federal Savings Bank v. Northwood Cheese Co., Inc.**, 637 A.2d 309 (Pa. Super. 1994) (upholding attorney collection fee of 15% of balance), *appeal denied*, 653 A.2d 1231 (Pa. 1994). **But see PNC Bank v. Bolus**, 655 A.2d 997 (Pa. Super. 1995) (noting trial court exercised its equitable power when it reduced 10% attorney fee of $70,000 to $10,000, when the note authorized a "reasonable attorney's commission, not to exceed ten percent of the amount of the loan in default.").

Therefore, because we find no abuse of discretion or error in the trial court's ruling denying Wilde's petition to strike or open the confessed judgment, we affirm the order on appeal.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/22/2015</u>

# IN THE COURT OF COMMON PLEAS OF
## MONTGOMERY COUNTY, PENNSYLVANIA
### CIVIL DIVISION

SILVERSWORD CAPITAL
INVESTMENTS, LLC

     v.

H. LARRY WILDE

:
:
:
:
:
:
:
:

Superior Ct. No. 2054 EDA 2014

Comm. Pl. Ct. No. 2014-03720

## OPINION

Moore, J.                                                                      July 29, 2014

### I.    FACTS AND PROCEDURAL HISTORY

This matter involves the appeal of Defendant, H. Larry Wilde, to this court's denial of his petition to open/strike a confession of judgment against him filed by Plaintiff, Silversword Capital Investments, LLC.

Silversword Capital Investments, LLC instituted the instant action against H. Larry Wilde on February 19, 2014 by filing a Complaint in Confession of Judgment, confessing judgment against Defendant in the amount of $865,996.06 pursuant to a cognovit clause contained in a Commercial Guaranty entered into by Wilde, dated October 1, 2007. Plaintiff's confession of judgment is based upon Defendant's breach of his obligations due under the Guaranty, to fully and punctually pay and satisfy his "Share of Indebtedness" of a certain Mortgage Note and related loan documents made to Moorestown Daycare Associates, LLC ("MDA") by the maturity date thereunder of September 1, 2013.

On or about March 20, 2001, Harleysville National Bank and Trust Company, successor by merger to Millennium Bank ("Harleysville"), made a loan to MDA, where it





2014-03720-0024  7/29/2014 10:40 AM  # 9895966
Opinion
Rcpt#Z2175596  Fee:$0.00
Mark Levy - MontCo Prothonotary

advanced to MDA the principal amount of $1,100,000.00. On or about October 5, 2007, Harleysville and MDA entered into a Note Modification Agreement, the purpose of which was, among other things, to re-advance the principal amount originally loaned, amend the interest rate, extend the maturity date and add certain financial covenants.

In conjunction with the Note Modification Agreement, and as additional security for the amounts loaned, Wilde entered into the Guaranty, whereby he absolutely and unconditionally guaranteed full and punctual payment and satisfaction of his "Share of the Indebtedness" of MDA to Harleysville. The Guaranty provides that Harleysville and its successors and assigns can enforce the Guaranty against Wilde, as guarantor, even when remedies against anyone else obligated to pay for the indebtedness or against any collateral securing the indebtedness, the guaranty or any other guaranty of indebtedness has not been exhausted. The Guaranty further defines the phrase "Guarantor's Share of the Indebtedness" to mean:

> an amount not to exceed Five Hundred Fifty Thousand & 00/100 Dollars ($550,000.00) of all the principal amount, interest thereon to the extent not prohibited by law, and all collection costs, expenses and attorneys' fees whether or not there is a lawsuit, and if there is a lawsuit, any fees for costs for trial and appeals.

In addition to guaranteeing the full and punctual payment and satisfaction of his share of the indebtedness to Harleysville, the Guaranty also contained a confession of judgment provision.

On February 28, 2013, MDA and First Niagara Bank, N.A. ("First Niagara"), as successor to Harleysville, entered into another Note Modification Agreement, wherein it was agreed that, as of February 21, 2013, the outstanding principal balance of the Note was $970,641.49, plus accrued interest. As part of this latest modification, MDA agreed

2

R685

that the maturity date under the Note was extended to May 20, 2013 and further agreed that all collateral and guaranties securing or supporting the Note remained in full force and effect and as valid collateral and support for the Note. Within the February 28, 2013 Note Modification Agreement, Wilde also executed a "Consent and Reaffirmation of Guaranty and Suretyship Agreement," whereby he consented to the terms of the February 28, 2013 Note Modification Agreement, agreed that his Guaranty remained in full force and effect, and reaffirmed and restated his absolute and unconditional guaranty of his Share of the Indebtedness as contained in the October 1, 2007 Guaranty. Specifically, the Consent and Reaffirmation contained language reaffirming the confession of judgment clause in the Guaranty. The maturity date set forth in the February 28, 2013 Note Modification Agreement was thereafter extended to September 1, 2013.

As of the September 1, 2013 maturity date, the principal balance of $955,830.30 along with accrued interest had not been paid to First Niagara by MDA. Pursuant to the terms of the Note, if the Note is not paid in full by the maturity date, the entire unpaid principal balance together with accrued interest and all other sums due under the Note and other loan documents shall be immediately due and payable along with interest (after such default and acceleration and until the indebtedness is paid in full, including after entry of any judgment) at the default rate of two percent (2%) per month. The Note further provides that the failure to make any payment of principal or interest, including the payment due at maturity, within ten (10) days after the same is due and payable will cause the lender to incur additional expense in servicing the indebtedness evidenced by the Note and would deprive the lender of the use of the monies due, the precise measure of which expenses and loss is not susceptible to exact determination. As a result, the

3



Note provides for a late charge of seven cents ($.07) to be assessed for each dollar so overdue in excess of ten (10) days. Moreover, pursuant to a March 20, 2001 Mortgage and Security Agreement, if the mortgagee engages counsel for any purpose pertaining to the indebtedness due thereunder, all of mortgagee's reasonable costs, expenses and reasonable counsel fees are to be paid by the mortgagor on demand. As of the date the Complaint was filed, First Niagara had incurred reasonable costs, expenses and counsel fees pertaining to the indebtedness in the amount of $20,335.77.

MDA defaulted in its obligations under the Note by failing to pay the principal and accrued interest due thereunder by the September 1, 2013 maturity date. On December 20, 2013, First Niagara assigned all of its rights, title and interest in and to the loan and accompanying loan documents made to MDA, including the Note and Guaranty, to plaintiff, Silversword. Silversword proceeded to supply Wilde and MDA, respectively, with Notices of Default on January 20, 2014.

Subsequently, pursuant to the terms of the Guaranty, Note and other loan documents, and by reason of the default by Wilde thereunder, Plaintiff confessed judgment against Wilde. Wilde thereafter filed a petition to open/strike the confessed judgment, which this court later denied. Wilde now appeals from this court's determination.

## II. DISCUSSION

It is well-settled that a judgment by confession will be stricken "only if a fatal defect or irregularity appears on the face of the record." *See, e.g., Graystone Bank v. Grove Estates, LP*, 58 A.3d 1277, 1281-82 (Pa. Super. Ct. 2012). A petition to strike does not involve the discretion of the court and, thus, matters contained in the record filed

4



by the party seeking to strike the judgment are not given any consideration by the court. *See id.* at 1282; *see also Resolution Trust Corp. v. Copley Qu-Wayne Assocs.*, 683 A.2d 269, 273 (Pa. 1996). "If the truth of the factual averments contained in such record are disputed, then the remedy is by proceeding to open the judgment and not to strike." *Resolution Trust*, 683 A.2d at 273. A judgment by confession will not be stricken if the record is "self-sustaining." *Graystone Bank*, 58 A.3d at 1282; *Resolution Trust*, 683 A.2d at 273. A record is self-sustaining if the warrant of attorney is in writing, is signed by the person to be bound by the warrant of attorney, and the signature is in direct relation of the warrant of attorney. *Frantz Tractor Co. v. Wyoming Valley Nursery*, 120 A.2d 303, 306-07 (Pa. 1956).

Wilde contends that the confession of judgment should be stricken because the amounts confessed are not authorized. Specifically, Defendant argues that the Guaranty expressly limits the amount of Wilde's financial liability to a maximum dollar amount of $550,000.00, irrespective of accrued interest, collection costs and attorney's fees. Wilde's position is not supported by the clear language of the Guaranty, which shows that each of the items included in the confessed judgment are authorized and permitted. Where a party has signed an agreement with clear and unambiguous language, the plain language of the agreement cannot be ignored. *Herman v. Stern*, 213 A.2d 594, 598 (Pa. 1967).

A suretyship agreement is created when a creditor refuses to extend credit to a debtor unless a third party agrees to provide additional security for the repayment of the underlying debt by personally undertaking the debtor's obligation to the creditor should the debtor fail to perform. *Rait P'ship, L.P. v. Wilson*, 2008 Phila. Ct. Com. Pl. LEXIS

5

83, *9 (C.P. Phila. County Apr. 7, 2008). Within the Guaranty, Wilde absolutely and unconditionally guaranteed full and punctual payment of his "Share of the Indebtedness" of MDA to Harleysville. As noted in paragraph 9 of the complaint, the phrase "Guarantor's Share of the Indebtedness" is defined in the Guaranty to mean the following: (i) the amount not to exceed Five Hundred Fifty Thousand Dollars ($550,000.00) of all the principal amount of the MDA Loan; (ii) interest thereon to the extent not prohibited by law; and (iii) all collection costs, expenses and attorneys' fees whether or not there is a lawsuit; and (iv) if there is a lawsuit, any fees and costs for trial and appeals. Based upon the unambiguous punctuation and intent of the Guaranty as a whole, it is clear that the phrase "Guarantor's Share of the Indebtedness" means each of the following items as separate and distinct: (i) principal in an amount not to exceed $550,000; (ii) interest accrued on the principal amount owed; (iii) all collection costs, expenses and attorneys' fees, regardless of whether or not there is a lawsuit; and (iv) in the event of a lawsuit, any fees and costs for trial and appeals incurred in connection therewith.

As noted by Wilde, both he and David Lisa executed Commercial Guarantees in connection with the $1,100,000 MDA loan. In light of the fact that Wilde owned fifty percent (50%) of MDA, Wilde's Guaranty obligated him to repay a proportionate fifty percent (50%) share of the principal amount owed, i.e., $550,000 and other charges such as interest and expenses. Moreover, the use of the commas separating the maximum principal in the amount of $550,000, the interest, the costs, expenses and attorneys' fees incurred whether or not there is a lawsuit, and the costs for trial and appeals if there is a lawsuit, together with the use of the word "and," establish that the $550,000 maximum

6

was intended to only apply to the principal owed in connection with the Note and Loan. If it were limited solely to the $550,000 suggested by Wilde, there would have been no need for the Guaranty to define "Share of the Indebtedness" to anything other than a limit of $550,000, and no more.

Wilde next argues that Silversword improperly confessed judgment based upon the Consent and Reaffirmation, and not based on the guaranty itself. In making his argument, Wilde ignores the fact that Silversword is confessing under the clear language under the Guaranty and not the Consent and Reaffirmation. Notwithstanding this fact, Wilde further ignores recent Pennsylvania cases upholding confession of judgment clauses in circumstances similar to the instant case and, instead, misplaces his reliance on *M & P Management, L.P. v. Williams*, 937 A.2d 398 (Pa. 2007) and *JBG/Rosenfeld Retail Properties v. Anspach*, 803 A.2d 783 (Pa. Super. Ct. 2002).

Recently, the Pennsylvania Superior Court expressly rejected the very argument advanced by both Wilde and the defendant in *M & P Management*. In *Ferrick v. Bianchini*, 69 A.3d 642, 650 n.7 (Pa. Super. Ct. 2013), the Superior Court initially noted that its prior decision in *M & P Management* did not address the merits of whether a cognovit clause had to be set forth in the body of an amendment, and not merely incorporated by general reference therein. Therefore, the *M & P Management* decision was in no way dispositive of the issue. The court proceeded to note that the cognovit clause before it was "clear and conspicuous" in the underlying agreements containing the warrant of attorney in addition to being "mentioned specifically in the amendment." *Id.* at 651. Ultimately, the Superior Court denied the defendant's appeal, ruling that, even though the warrant of attorney was not restated in its entirety in the amendment, it

7

R73q

specifically republished the terms of the confession of judgment and clearly stated the parties' intent that it continue in effect. *See id.* at 652.

Wilde's argument that a specifically authorized attorneys' commission in the amount of ten percent (10%) of the principal and interest due is "grossly excessive, punitive and/or unconscionable" ignores the clear precedent of Pennsylvania courts approving the inclusion of such amounts in confessed judgments. Based upon Pennsylvania precedence, it is clear that the ten percent (10%) attorneys' commission is by no means excessive or unwarranted. Pennsylvania courts have routinely upheld similar provisions in confession of judgment clauses, and have upheld significantly higher percentages in cognovits clauses, so long as the amount set forth is specifically authorized by the warrant of attorney. *See, e.g., Rait P'ship, L.P. v. E Pointe Props. I, Ltd.,* 957 A.2d 1275, 1279 (Pa. Super. Ct. 2008) (upholding 15% attorneys' collection commission as "specifically authorized by the warrant of attorney"); *Dollar Bank v. Northwood Cheese Co.,* 637 A.2d 309, 314 (Pa. Super., Ct. 1994) (same); *Wilson,* 2008 Phila Ct. Com. Pl. LEXIS 83, at *13 (upholding 20% attorneys' collection commission in amount of $3,737,237.52 as "specifically authorized by the warrant of attorney"). The Guaranty here specifically authorizes "an attorney's commission of ten percent (10%) of the unpaid principal balance and accrued interest for collection."

A petition to open a confessed judgment is an appeal to the equitable powers of the court. As such, "[a] judgment taken by confession will be opened in only a limited number of circumstances, and only when the person seeking to have it opened acts promptly, alleges a meritorious defense and presents sufficient evidence of that defense to require submission of the issues to the jury." *First Seneca Bank & Trust Co. v. Laurel*

8

*Mountain Dev. Corp.*, 485 A.2d 1086, 1088 (Pa. 1984). A meritorious defense is one upon which relief could be afforded if proven at trial. *Ferrick*, 69 A.3d at 647. Wilde has failed to present sufficient evidence of a meritorious defense that would warrant opening the confessed judgment.

Wilde has neither demonstrated the existence of a meritorious defense, nor produced clear, direct, precise or believable evidence sufficient to warrant the opening of the confessed judgment. Instead, Wilde's Petition asserts that the confessed judgment must be opened because a member of MDA, David Lisa, was allegedly in exclusive control of MDA, and that Lisa caused MDA to default on, or to refrain from renewing or refinancing, the MDA Loan.

Wilde defaulted under the Guaranty by failing to make payments when due, including payment of the principal balance of $955,830.30 by maturity date under the Loan Documents of September 1, 2013. Wilde has neither disputed the default nor alleged that he has cured the default. *See Manor Bldg. Corp. v. Manor Complex Assocs., Ltd.*, 645 A.2d 843, 848 (Pa. 1994).

Judgment was confessed against Wilde pursuant to his obligations under his individual Guaranty of the Note and related loan documents in connection with a loan from Harleysville to MDA. These obligations did not disappear simply because the Note, Guaranty and loan documents were assigned from First Niagara, as successor to Harleysville, to Silversword. Silversword is the plaintiff and the holder of the Guaranty, Note and related loan documents. Wilde fails to allege the existence of a single meritorious defense against Silversword. Instead, Wilde's defenses are all directed towards Lisa, acting in his capacity as a member of MDA. Any purported claims Wilde

9



may have against a member of MDA are not relevant and have nothing to do with the obligations under the Guaranty, Note and related loan documents, and Silversword's right to exercise its rights under the confession of judgment clause.

The documents are clear on their face that default would occur if the principal balance was not paid off in its entirety by the September 1, 2013 maturity date. Wilde therefore lacks a meritorious defense as "it is readily apparent that [Wilde] did not comply with the terms" of the Guaranty. *Beneficial Mut. Sav. Bank v. Gelt Fin. Corp.*, 2011 Phila. Ct. Com. Pl. LEXIS 260, **8-9 (C.P. Phila. County Sep. 12, 2011); *see also Indus. Valley Bank & Trust Co. v. Lawrence Voluck Assocs., Inc.*, 428 A.2d 156 (Pa. Super. Ct. 1981). Accordingly, this court properly denied Defendant's petition to open/strike the confessed judgment.

## III.  CONCLUSION

Based upon the foregoing analysis, this Court's determination was proper and should be **AFFIRMED**.

BY THE COURT:

*Bernard A. Moore*

BERNARD A MOORE, J.

Date:  July 29, 2014
Cc:  Nicholas Poduslenko, Esq.
Michael V. Phillips, Esq.
Marc A. Zaid, Esq.

10